# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| BOOKER T. FLOWERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 18 C 7003 |
| v. | ) | |
| | ) | |
| CITY OF CHICAGO and, | ) | Judge Thomas M. Durkin |
| TEAMSTERS LOCAL 700 | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Booker T. Flowers, who is represented by counsel, brings this action against defendants the City of Chicago and Teamsters Local 700 (the "Union") under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. § 1981, and the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*, and against the Union for breach of the duty of fair representation. R. 1. Currently before the Court is the City's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), R. 23, and the Union's motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and (6), R. 25. For the following reasons, the Court grants in part and denies in part each motion.

### STANDARD

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Berger v. Nat. Collegiate Athletic Assoc.*, 843 F.3d 285, 289 (7th Cir. 2016). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018). A defendant may raise the statute of limitations in a motion to dismiss if "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005).

Rule 12(b)(1) authorizes the Court to dismiss any claim for which the Court lacks subject matter jurisdiction according to Article III, Section 2 of the U.S. Constitution. When a defendant challenges jurisdiction, the plaintiff bears the burden of establishing a court's jurisdiction. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992). As with a motion under 12(b)(6), a court deciding a Rule 12(b)(1) motion must "accept as true all well-pleaded factual allegations and draw all

reasonable inferences in favor of the plaintiff." *St. John's United Church of Christ v. City of Chi.*, 502 F.3d 616, 625 (7th Cir. 2007) (quotation marks omitted).

## BACKGROUND

Booker T. Flowers, who is African-American, has been employed by the City of Chicago since 2005, and a Union member at all relevant times. R. 1 ¶¶ 6, 9. He began his employment with the City as a Pool Motor Truck Driver with the Department of Streets and Sanitation, and was assigned a "pool number" to track his seniority. *Id.* ¶¶ 9-10. Flowers was transferred in 2007 to the Department of Aviation where he worked as a driver for approximately one year. *Id.* ¶ 11. Then Flowers was transferred to the Department of Revenue, where he worked booting vehicles until 2016. He earned "career service status," which the Court assumes provided some protection from layoffs, while in this role. *Id.* ¶¶ 12, 17.

One evening while booting a vehicle, Flowers was held at knifepoint. *Id.* ¶ 14. He subsequently developed post-traumatic stress disorder. *Id.* ¶ 15. The City assigned Flowers daytime hours going forward, and in April 2014 agreed to reassign him as an accommodation. *Id.* ¶ 16. Flowers was eventually reassigned to a Pool Motor Truck Driver position with the Department of Aviation in 2016. *Id.* ¶ 19.

On or around June 14, 2017, the City informed Flowers that his original pool number had been retired because of his "break in service" when he worked as a booter. The City assigned a new pool number reflecting less seniority, and immediately laid Flowers off as a result. *Id.* ¶¶ 20-21. Flowers asked the Union for help grieving the issue, but the Union declined. *Id.* ¶¶ 23-24. Flowers was later brought back to work

for a short time under his new pool number, but was laid off again on March 31, 2018. *Id.* ¶ 25. Flowers has not been called back to work, although according to him, others with less seniority have been rehired. *Id.* ¶ 26.

Flowers cross-filed charges of discrimination with the Equal Employment Opportunity Commission and the Illinois Department of Human Rights on July 19, 2018 alleging that the City and the Union engaged in race and disability discrimination against him when the City "changed [his] seniority date which resulted in [his] being selected for laid [sic] off" and the Union refused to represent him in his related grievance. *Id.* ¶ 27; R. 1-1 at 1-2. The EEOC issued a right to sue letter on his charge against the City the next day, and on his charge against the Union five days after that. R. 1 ¶¶ 28, 29; R. 1-1 at 3-4.

Flowers filed this action on October 18, 2018. R. 1. His complaint includes four counts: (1) a Title VII race discrimination claim against both Defendants (Count I); (2) a Section 1981 race discrimination claim against both Defendants (Count II); (3) an ADA discrimination claim against both Defendants (Count III); and (4) a breach of the duty of fair representation claim against the Union (Count IV). *See generally id.* The City and the Union each moved to dismiss Flowers's complaint on February 19, 2019 alleging that Flowers's Title VII, ADA, and breach of the duty of fair representation claims are time-barred, and that Flowers's complaint fails to state a claim for relief on any of Counts I-IV. R. 23; R. 25.

ANALYSIS

## I.    Title VII and ADA claims (Counts I and III)

Defendants argue that Flowers's Title VII and ADA claims (Counts I and III) should be dismissed both because they were not timely filed, and because they fail to state a claim under Rule 12(b)(6). The Court addresses each argument in turn, beginning with Defendants' timeliness argument.

### A.    Timeliness

Defendants contend that Flowers's Title VII and ADA claims are time-barred because they arose in June 2017 when he was initially laid off after his pool number was "retired" and the Union failed to grieve the issue, but he did not file his charges of discrimination until over a year later in July 2018. R. 23 at 6-7; R. 26 at 6-7; R. 35 at 7-9; R. 36 at 1-5. In response, Flowers argues that the continuing violation doctrine saves at least some of his claims, and that the ADA contains no statute of limitations in any event. R. 32 at 9-11; R. 33 at 2-4, 9-10.

Contrary to Flowers's argument, in deferral states like Illinois, a charge of disability discrimination under the ADA generally must be filed within 300 days of the alleged unlawful employment practice, just like a charge of Title VII race discrimination. *Bass v. Joliet Public Sch. Dist. No. 86*, 746 F.3d 835, 839 (7th Cir. 2014); 42 U.S.C. § 2000e-5(e)(1); *Stepney v. Naperville Sch. Dist. 203*, 392 F.3d 236, 239 (7th Cir. 2004) ("Because the ADA's enforcement provision expressly incorporates § 2000e-5 of Title VII, claims for discrimination under the ADA also must be filed within 300 days 'after the alleged unlawful employment practice occurred.'" (quoting

5

42. U.S.C. § 2000e-5(e)(1), incorporated by 42 U.S.C. § 12117(a))). Thus, if a plaintiff does not file a charge of discrimination within the 300-day filing window, her claim generally fails as untimely. *Bass*, 746 F.3d at 839 (citing *Roney v. Ill. Dept. of Transp.*, 474 F.3d 455, 460 (7th Cir. 2007)).

But the Seventh Circuit applies the continuing violation doctrine to allow a plaintiff to obtain relief for a time-barred act if that act is linked to another occurring within the limitations period, and does so in three specific circumstances. Namely, when: (1) the "exact day of the violation is difficult to pinpoint because the employer's decision making process takes place over a period of time"; (2) "the employer has a systematic, openly espoused policy alleged to be discriminatory"; or (3) "the employer's discriminatory conduct is so covert that its discriminatory character is not immediately apparent." *Place v. Abbott Labs.*, 215 F.3d 803, 808 (7th Cir. 2000). The doctrine does not apply when the time-barred incident "viewed alone should have triggered an employee's awareness of and duty to assert his or her rights." *Simpson v. Borg-Warner Auto., Inc.*, 196 F.3d 873, 875 (7th Cir. 1999). And nor does it apply when continuing harm results from such a discrete act. *Bass*, 746 F.3d at 839-40 ("If a discrete wrongful act causes continuing harm . . . then the 300-day period [in which to file an administrative charge] runs from the date of that event; it does not restart with each new day the harm is experienced." (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002))). Instead, the continuing violation doctrine is best suited for claims that "involve[ ] repeated conduct," such as hostile work environment claims. *Morgan*, 536 U.S. at 115; *Williams v. Zaruba*, 2014 WL 6887211, *4 (N.D. Ill. Dec. 4, 2014).

Here, Flowers alleges that his original pool number was "retired" in June 2017 when he transferred back into a Pool Motor Truck Driver position after working in other positions, and that his resulting loss of seniority caused an immediate layoff, and another layoff in March 2018. *See generally* R. 1. He further alleges that the Union failed to grieve the incidents. As discussed in Section I(B) below, this is not a hostile work environment case. And the continuing violation doctrine is not otherwise applicable. There is no allegation in the complaint (nor argument in Flowers's briefs) of a lengthy decision-making process, that Defendants' alleged discriminatory conduct was difficult to discern at the time it occurred, or that Defendants maintain an openly-espoused discriminatory policy.

Instead, the events underlying Flowers's claims are the discrete acts—known to him at the time—of the City's June 2017 denial of his seniority and resulting layoffs at that time and again in March 2018, and the Union's failure to grieve those events. *See Stepney*, 392 F.3d at 240 n.1 (recognizing loss of seniority as a "discrete act" to which the continuing violation doctrine could not apply). Flowers therefore had 300 days from the June 14, 2017 loss of seniority and resulting layoff to file a charge against the City with respect to those events, and, per the terms of the collective bargaining agreement, 12 additional days within which to file his charge against the Union.[1] But Flowers did not file his charges until over a year later in July 2018. Therefore, to the extent that Flowers's Title VII and ADA claims rest on Defendants'

---

[1] Apparently 12 days is the time period within which the Union could pursue a grievance on a member's behalf under the collective bargaining agreement.

action (or inaction) in June 2017, they are time-barred. *See id.* ("Stepney alleged in his EEOC charge, and alleges in his complaint, that the transfer and loss of seniority were unlawful in themselves. Accordingly, Stepney's claims are not made timely by the continuing violation doctrine.").

But Flowers may proceed on his Title VII and ADA claims to the extent they are based on his March 2018 layoff and the Union's failure to grieve it; both occurred within the 300-day period prior to his July 2018 charges. *See Hillman v. Chicago Sch. Reform Bd.*, 131 F. Supp. 2d 973, 976 (N.D. Ill. 2001) ("An employer cannot demote someone to a lower seniority job for an illegal reason, then fire him because he lacks seniority, and avoid liability under the discrimination laws. That would create a loophole the size of Brazil through which a discriminatory employer could drive his illegal designs in getting rid of employees he does not want for prohibited reasons."); *see also Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*, 782 F.3d 922, 928 (7th Cir. 2015) (timeliness issue more appropriate for summary judgment or trial where a conceivable set of facts consistent with the complaint would defeat a statute of limitations defense).

### B.    Whether the Complaint States a Claim

#### 1.    Title VII (Count I)

At the outset, the Court notes the confusion over the nature of Flowers's claim; the complaint alleges that Defendants' actions toward him created a "hostile working environment," R. 1 ¶¶ 32-33, but Flowers's briefs argue that the complaint plausibly alleges the elements of a Title VII (and Section 1981) disparate treatment claim. R.

33 at 4; R. 36 at 5. To state a hostile work environment claim, Flowers must plausibly allege that: (1) he was subject to unwelcome harassment; (2) the harassment was based on his race; (3) the harassment was severe or pervasive so as to alter the conditions of employment and create a hostile or abusive working environment; and (4) there is a basis for employer liability. *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cnty.*, 804 F.3d 826, 833-34 (7th Cir. 2015). As already explained, Count I concerns the City's denial of Flowers's seniority and his layoffs, and the Union's failure to grieve his claims, not severe or pervasive harassment. R. 1 ¶¶ 32-33.[2] And Flowers himself does not meaningfully argue that his complaint plausibly pleads a hostile work environment theory. The Court declines to construe Count I as such.

Defendants argue that Count I also fails to state a claim of disparate treatment, because it does not allege facts to suggest discriminatory animus or that

---

[2] Any Title VII hostile work environment claim fails for the additional reason that "[g]enerally, a plaintiff may not bring claims under Title VII that were not originally included in [his administrative charge]." *Moore v. Vital Prods., Inc.*, 641 F.3d 253, 256-57 (7th Cir. 2011) (quoting *Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720, 726 (7th Cir. 2003)). Indeed, "the only qualification to this principle applies to claims that are 'like or reasonably related' to the EEOC charge, and can be reasonably expected to grow out of an EEOC investigation of the charges." *Sitar*, 344 F.3d at 726 (quoting *Jenkins v. Blue Cross Mut. Hosp. Inc.*, 538 F.2d 164, 167 (7th Cir. 1976) (*en banc*)). Flowers's administrative charges say nothing about harassment or a hostile work environment. *See* R. 1-1 at 1-2 (alleging that the City "changed [his] seniority date which resulted in [his] being selected for laid [sic] off" and the Union "refused to represent [him] and took no action" because of his race and disability); *see also Vela v. Vill. of Sauk Vill.*, 218 F.3d 661, 664 (7th Cir. 2000) (sexual harassment claim dismissed as "wholly diverse" from disparate treatment claim in EEOC charge); *see also Cheek v. W. and S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994) ("a claim of sex discrimination in an EEOC charge and a claim of sex discrimination in a complaint are not alike or reasonably related just because they both assert forms of sex discrimination.").

Flowers's race was the basis for Defendants' actions (or inaction), and nor does it plausibly allege that Flowers was meeting legitimate job expectations or that Defendants treated similarly-situated non-African Americans more favorably. R. 23 at 8-9; R. 26 at 7-8; R. 35 at 12-13; R. 36 at 5-6. In response, Flowers contends that the fact that he was meeting legitimate job expectations can be inferred from "his lengthy service," and that the complaint alleges that Defendants treated similarly-situated non-African Americans more favorably. R. 32 at 12-13; R. 33 at 4-5.

But setting aside that the complaint actually alleges nothing at all about how employees outside Flowers's protected class were treated, *see* R. 1 ¶ 26 (alleging only that other drivers "with less seniority" had been rehired), the parties miss that to survive a motion to dismiss, a Title VII disparate treatment claim need only allege that defendants "took job-related action against [the plaintiff] which was motivated by intentional discrimination." *Alamo v. Bliss*, 864 F.3d at 552 (citing *Ernst v. City of Chi.*, 837 F.3d 788, 794 (7th Cir. 2016)); *see also Tamayo v. Blagojevich,* 526 F.3d 1074, 1084 (7th Cir. 2008) ("to prevent dismissal under Rule 12(b)(6), a complaint alleging sex discrimination need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her sex."); *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1028 (7th Cir. 2013) (same).

The complaint is far from a model of clarity, and although Count I does not allege that Defendants acted as they did due to Flowers's race, *see* R. 1 ¶¶ 32, 33 (alleging that the City's "harassment, changing of his Pool status, failing to recognize the Plaintiff as a career service employee, and failing to re-hire him from the lay off

list" and the Union's "failure" to "grieve plaintiff's claims" created a "hostile working environment," and that "complaints" to supervisors and union representatives of "mistreatment and harassment" went unaddressed), Count II, Flowers's Section 1981 claim based on the same conduct, does. *See id.* ¶ 37 ("Defendants [sic] harassment of Plaintiff based on his race created a hostile working environment for Plaintiff"). The Court assumes the allegations were made consistently with the requirements of Federal Rule of Civil Procedure 11(b). This is enough. Accordingly, the Court denies Defendants' motion to dismiss Count I.

### 2.    ADA (Count III)

Defendants argue that the complaint fails to plausibly allege facts to support any of the elements of an ADA discrimination claim, and that it fails to allege any wrongdoing by the Union at all. R. 23 at 12-14; R. 26 at 8-9; R. 35 at 13-14; R. 36 at 9-10. In response, Flowers argues in conclusory fashion that he "established that he has a disability and that he could work with an accommodation because he actually was provided with an accommodation and performed his job duties." R. 32 at 13; R. 33 at 10.

To state an ADA discrimination claim, Flowers must plausibly allege that: (1) he has a disability within the meaning of the ADA; (2) he is qualified to perform the essential functions of the job either with or without reasonable accommodation; and (3) he suffered an adverse employment action because of his disability. *Gogos v. AMS Mech. Sys., Inc.*, 737 F.3d 1170, 1172 (7th Cir. 2013). The ADA defines "disability" as: "(A) a physical or mental impairment that substantially limits one or more major life

activities;" "(B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Flowers alleges neither the major life activity in which he is limited, nor that such limitation is substantial. Instead, Flowers alleges that he suffers from "post-traumatic stress disorder (PTSD), which substantially limits his [unspecified] major life activities," and that this condition "is considered a disability under the Americans with Disabilities Act" that "is not minor or transitory." R. 1 ¶¶ 15, 42-43. But a plaintiff alleging that he was "regarded as" disabled need not also allege that he was limited in a major life activity. *See Silk v. Bd. of Trustees, Moraine Valley Cmty. Coll., Dist. No. 524*, 795 F.3d 698, 706 (7th Cir. 2015) (a plaintiff is "regarded as" disabled if the defendant "perceived him as having an impairment, 'whether or not the impairment limits or is perceived to limit a major life activity.'" (quoting 42 U.S.C. § 12102(3)(A))). Indeed, a person is "regarded as" disabled if he "has been subjected to [a prohibited action] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102. The complaint satisfies this standard as to the City. It is reasonable to infer that the City perceived Flowers as disabled from the allegations that the City "switched [Flowers] to daytime hours" after he was held at knifepoint and "agreed to accommodate [him] through reassignment." R. ¶¶ 16, 18. These allegations along with the allegations that Flowers "suffered adverse employment decisions—including denial of his career service status, denial of consistent work, and lower pay—because of his disability" (PTSD) are sufficient to satisfy both the first and third elements as to the City. R. 1 ¶ 48.

And Flowers's allegation that he "would be able to work with reasonable accommodations, that he not be a booter" supports an inference that he can perform the essential functions of a Pool Motor Truck Driver, thus satisfying the second element. *Id.* ¶ 47. The City cites *Maxwell v. Cnty. of Cook*, 2014 WL 3859981 (N.D. Ill. Aug. 4, 2014) to argue otherwise, but that case is easily distinguished. There, the court determined that the complaint failed to plausibly allege the second element both because it did not identify any accommodation that would have allowed the plaintiff to perform his duties, and because the factual allegations in the complaint contravened any inference that a sufficient accommodation existed in any event. *Maxwell*, 2014 WL 3859981, at \*5. Neither is the case here, so Flowers may proceed with his ADA claim against the City. But the Union correctly points out that the complaint includes no allegations of any wrongdoing by it because of Flowers's alleged disability. *See generally* R. 1. Accordingly, Count III is dismissed as to the Union.[3]

## II.    Section 1981 Claim (Count II)

The City contends that Flowers's Section 1981 claim (Count II) fails as to it because it is not properly plead under Section 1983 and *Monell*. Both Defendants

---

[3] The Court notes that to the extent Flowers intended to pursue a failure to accommodate claim—an issue that the parties do not address in their briefs but is referred to in the complaint, R. 1 ¶ 50 (referring to "Defendants' failure to provide proper accommodations")—such a claim fails because he did not raise it in his administrative charges. *See Green v. Nat'l Steel Corp., Midwest Div.*, 197 F.3d 894, 898 (7th Cir. 1999) ("a failure to accommodate claim is separate and distinct from a claim of discriminatory treatment under the ADA," and the two are not "like or reasonably related" to allow for recovery where no failure to accommodate is reflected on the EEOC form).

argue that the complaint fails to state a claim in any event. The Court addresses each argument in turn.

### A.    As to the City:  Section 1983 and *Monell*

The City argues that Flowers's Section 1981 claim is improperly plead against it because Section 1983 is the sole remedy for pursuing a Section 1981 claim against a state actor, and even if Flowers had plead Count II under Section 1983, it fails under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978) and its progeny.

In response, Flowers argues that he need not plead his Section 1981 claim against the City under Section 1983, citing several Seventh Circuit opinions allowing Section 1981 claims against state actors. *See* R. 33 at 7-8 (collecting cases). But these cases are inapposite; all were decided before the Seventh Circuit—as a matter of first impression and relying upon *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989)— made clear that Section 1983 "'provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor.'" *Campbell v. Forest Preserve Dist. of Cook Cnty., Ill.*, 752 F.3d 665, 669-71 (7th Cir. 2014) (quoting *Jett*, 491 U.S. at 735-36).

And Flowers's Section 1981 claim against the City fails even if construed under Section 1983. Under *Monell*, Flowers must plausibly allege that "an official policy or custom not only caused the constitutional violation, but was the 'moving force' behind it." *Estate of Sims ex rel. Sims v. Cnty. of Bureau*, 506 F.3d 509, 514-15 (7th Cir. 2007); *see also Barrett v. Ill. Comm. College Dist. No. 515*, 2015 WL 4381218, at *3 n.5 (N.D.

Ill. July 16, 2015) ("One consequence of [the Supreme Court's holding in *Jett* and the Seventh Circuit's holding in *Campbell*] is that the 'policy or custom' requirement of *Monell* . . . applies to Section 1981 claims against state actors"). To demonstrate such an "official policy," Flowers must plausibly allege:

> (1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority.

*Estate of Sims ex rel.*, 506 F.3d at 515. Flowers has failed to plausibly allege facts constituting an "official policy" under any of the available methods, having alleged only that "[t]he harassment was willful and intentional, and created an intimidating, hostile and offensive working environment for Plaintiff," and that Flowers's "complaints to his supervisors and union representatives of the mistreatment and harassment have not been acted upon." R. 23 at 10-11; R. 1 ¶¶ 38, 39. Flowers does not argue otherwise. Accordingly, because Flowers must plead his Section 1981 claim against the City under Section 1983, and because he has not stated a claim under *Monell*, Count II is dismissed as to the City.

### B.    Whether the Complaint States a Claim Against the Union

Defendants contend that Flowers's Section 1981 claim fails for the same reasons as his Title VII claim.[4] R. 23 at 11-12; R. 26 at 7-8; R. 35 at 12-13; R. 36 at 8-9. Flowers also repeats his Title VII arguments against dismissal. R. 32 at 12-13; R.

---

[4] Defendants do not move to dismiss Count II as untimely. Rightly so: the statute of limitations for Section 1981 employment discrimination claims is four years. *Dandy v. United Parcel Serv. Inc.*, 388 F.3d 263, 269 (7th Cir. 2004).

33 at 8-9. Because the Court has already determined that Count II fails against the City, the issue is solely whether Flowers has stated a claim against the Union.

Section 1981 prohibits racial discrimination in the "mak[ing] and enforc[ing]" of contracts, and its protections include the "making, performance, modification and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions" of such contractual relationships. 42 U.S.C. § 1981(a), (b). "[U]nion membership, in which a member pays dues in exchange for certain benefits, is a contract under § 1981." *Lugo v. Int'l Brotherhood of Elec. Worker Local 134*, 2017 WL 1151019, at *5 (N.D. Ill. Mar. 28, 2017); *see also James v .Ogilvie*, 310 F. Supp. 661, 663 (N.D. Ill. 1970) ("membership in a labor union is a contractual relationship" for purposes of Section 1981). Although Section 1981 does not require a plaintiff to file a charge with an administrative agency, generally, Title VII and Section 1981 claims are judged by the same standard. *See Williams v. Cnty. of Cook*, 969 F. Supp. 2d 1068, 1080 (N.D. Ill. 2013) ("§ 1981 and § 1983 claims do not require the plaintiff to first exhaust administrative remedies before bringing a suit in federal court."); *see also E.E.O.C. v. Pipefitters Ass'n Local Union 597*, 334 F.3d 656, 658 (7th Cir. 2003) (same standards apply to Title VII and Section 1981 claims). Accordingly, Flowers's Section 1981 claim must meet the standards for a Title VII claim set forth in Section I(B)(1).

In his Section 1981 claim, Flowers alleges in relevant part that he is African American and "Defendants [sic] harassment of Plaintiff based on his race created a hostile working environment for Plaintiff." R. 1 ¶¶ 36-37. He further alleges that "[u]pon information and belief, Plaintiff's complaints to his supervisors and union

representatives of the mistreatment and harassment have not been acted upon," and that "[t]he harassment was willful and intentional, and created an intimidating, hostile and offensive working environment for Plaintiff." *Id.* ¶¶ 38-39. By incorporating the allegations in Count I, Count II includes at least some specific factual allegations, namely, as relevant to the Union, the Union's "failure to enforce the CBA and grieve [Flowers's] claims." *Id.* ¶ 32.

Despite Count II's repeated references to harassment and hostile work environment, Flowers's Section 1981 claim, like his Title VII claim, sounds in disparate treatment only. And although the allegations are sparse, the Court finds them sufficient to plausibly allege disparate treatment by the Union. *See Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 633 (7th Cir. 2013) ("To survive a motion to dismiss, the complaint "need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of his race."). The Court thus denies the Union's motion to dismiss as to it on Count II.

III.    **Duty of Fair Representation Claim (Count IV)**

The Union contends that Count IV also fails because this Court lacks jurisdiction to hear it, the statute of limitations has run, and it fails to plausibly allege that the Union breached its duty in any event. R. 26 at 3-6, 9-10; R. 35 at 1-12.

The Union argues at the outset that Flowers's breach of the duty of fair representation claim fails because the Illinois State Labor Relations Board (the "Board") has exclusive jurisdiction over unfair labor practice actions brought by public employees. R. 26 at 3-4; R. 35 at 1-5. The Illinois Public Labor Relations Act

("IPLRA"), 5 ILCS 315/1 *et seq.*, creates a comprehensive collective bargaining scheme for public employees and employers which includes grievance procedures and remedies.[5] The IPLRA created the Board to enforce the system and resolve disputes thereunder. Federal and Illinois state courts have been clear that the Board has exclusive jurisdiction to hear unfair labor practice grievances—including breach of a union's duty of fair representation—of Illinois public employees like Flowers. *See Carver v. Nall*, 172 F.3d 513, 516 (7th Cir. 1999) ("the [Board] has exclusive jurisdiction to hear unfair labor practice grievances of Illinois state employees"); *see also McHugh v. Ill. Dep't of Transp.*, 2019 WL 1125814, at *3 (N.D. Ill. Mar. 12, 2019) (the Board "has exclusive jurisdiction over unfair labor practice claims stemming from the IPLRA"); *Stahulak v. City of Chi.*, 684 N.E.2d 907, 911 (Ill. App. Ct. 1997) ("under Illinois law, a union's breach of duty of fair representation is an unfair labor practice under the IPLRA, which initially falls under the exclusive jurisdiction of the . . . Board, not the circuit court."); *Foley v. Am. Fed. of State, Cnty. and Mun. Emps., Council 31, Local No. 2258*, 556 N.E.2d 581, 583 (Ill. App. 1990) (same). Accordingly, this Court lacks jurisdiction over Count IV.

Moreover, "[f]inal orders issued by the Board are appealable directly to the appellate court" under the Administrative Review Law. *Foley*, 556 N.E.2d at 583; *see also* 5 ILCS 315/9 (permitting judicial review of final orders by the Board "in accordance with the Administrative Review Law"). Indeed, "[n]o provision exists in

---

[5] Although Flowers did not specifically plead his breach of the duty of fair representation claim under the IPLRA, he indicates that his claim is brought under that statute in his response brief. R. 32 at 3.

the Act which authorizes public employees to file suit in the circuit court, alleging a union's breach of duty of fair representation." *Foley*, 556 N.E.2d at 583-84. Thus, even if Flowers's claim had first been heard by the Board, this Court could not review it in any event.

Flowers argues that the Supreme Court's decision in *Vaca v. Sipes*, 386 U.S. 171 (1967) requires the Court to find jurisdiction here. In *Vaca*, the Supreme Court found concurrent jurisdiction between a federal court and the National Labor Relations Board over the plaintiff's "hybrid" claim for an employer's breach of a collective bargaining agreement and a union's breach of the duty of fair representation unfair labor practice claim. But that case is easily distinguished. *Vaca* concerned a private sector employee's claim under the National Labor Relations Act, not a public sector employee claim under the IPLRA. And the Supreme Court's reasoning turned on the fact that under the NLRA, the NLRB's General Counsel has unreviewable discretion to bring or decline to bring an unfair labor practice action, and retains final authority to prosecute the complaint before the NLRB. *Vaca*, 386 U.S. at 182-83. In contrast, the IPLRA allows a charging party to prosecute his own case, and the Board's decision is appealable. *Vaca* has no bearing on the issues here. *See McHugh*, 2019 WL 1125814, at *3 (*Vaca*'s "rationale does not support stripping the [Board] of its exclusive jurisdiction over IPLRA claims" because charging party can prosecute his own case, and the Board's decision is appealable); *Foley*, 556 N.E.2d at 585 (distinguishing *Vaca* and concluding that "sufficient safeguards are prevalent

in the [IPLRA] which adequately protect an individual from any prejudice that may result from the Board's exclusive jurisdiction").

And Flowers's contention that the cases finding exclusive jurisdiction in the Board were "decided incorrectly" and that the Court should interpret the IPLRA differently is of no moment; the Seventh Circuit has spoken on this issue and that decision is binding on this Court.[6] Accordingly, Flowers's unfair labor practices claim fails for lack of jurisdiction, and the Court need not address Defendants' other arguments regarding statute of limitations and whether Flowers has stated a claim for relief. Further, the Court denies Flowers's request for leave to amend his complaint to cure the deficiencies in Count IV, because "no amendment could bring th[is] count[ ] out from under the exclusive jurisdiction of the [Board]." *McHugh*, 2019 WL 1125814, at *4 (denying leave to amend IPLRA unfair labor practice claim because "amendment would be futile").

---

[6] Nor does Flowers's (apparently alternative) argument that neither the federal Labor Management Relations Act nor the IPLRA gives rise to a union's duty of fair representation carry the day for Flowers. R. 32 at 6. First, while the LMRA plainly does not apply here, both statutes provide relief for the breach of a union's duty of fair representation in any event. *See Strasburger v. Bd. of Educ., Hardin Cnty. Comm. Unit Sch. Dist. No. 1*, 143 F.3d 351, 359 (7th Cir. 1998) (providing that "[t]he LMRA specifically excludes political subdivisions from its definition of 'employer'" and dismissing claim against the school board on that basis (citing 29 U.S.C. § 142(3))); *see also Stahulak*, 684 N.E.2d at 911 ("under Illinois law, a union's breach of duty of fair representation is an unfair labor practice under the IPLRA"); *Vaca*, 386 U.S. at 181 (a union's breach of its duty of fair representation is an unfair labor practice under the LMRA).

## CONCLUSION

For these reasons, the Court grants the City's motion to dismiss with respect to Count II, but denies it with respect to Counts I and III, and grants the Union's motion to dismiss with respect to Counts III and IV, but denies it with respect to Counts I and II. R. 23; R. 25. Count IV against the Union is dismissed with prejudice. If Flowers believes he can cure the deficiencies identified here as to Counts II or III against either or both Defendants, he may move for leave to file an amended complaint within 30 days of the date of this opinion. Any such motion should attach a redlined comparison between the complaint and the amended complaint, and should be supported by a brief of no more than five pages describing how the proposed amended complaint cures the deficiencies in the current complaint. Should Flowers choose to file such a motion, Defendants should not respond unless ordered to do so by the Court.

ENTERED:

_____

Honorable Thomas M. Durkin
United States District Judge

Dated: May 1, 2019